# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| vs. ) | **CRIMINAL ACTION NO. 09–00240-KD** |
| **JOSE NORIEGA, OMAR HUEZO,** ) | |
| **MADELYN ALOMA, and** | |
| **YZUMY RODRIGUEZ,** ) | |
| **Defendants.** ) | |

## ORDER

This matter is before the Court on defendants' motions to suppress and the defendants' motions to sever filed by defendants Omar Huezo (doc. 131), Jose Noriega (docs. 98, 115), Madelyn Aloma (docs. 100, 114), and Yzumy Rodriguez (docs. 97, 99) and the United States' responses (docs. 150, 151). A hearing was held on January 15, 2010.

I. Findings of Fact[1]

A few days before October 9, 2009, Corporal Wilbur Williams received a phone call from an anonymous tipster. The caller told Williams that there were three residences in Eight Mile, Alabama, where Cuban residents were growing marijuana in-house. The caller gave the specific addresses of the residences and indicated that the outbuildings were equipped with large air conditioners. The caller refused to answer William's inquiries regarding the source of his knowledge. On October 9, 2009, Williams, along with 5-6 other police officers, proceeded to the residences to check out the tip. Eventually each of the residences and outbuildings were searched, which resulted in the discovery of large in-house marijuana grow productions. The

---

[1] The facts are derived almost exclusively from the testimony of Corporal Wilbur Williams. The Court finds Williams' testimony to be credible.

defendants Huezo, Noriega, Aloma and Rodriguez each claim standing to contest the search of their respective residence and outbuilding.

    A) <u>Jib Road Residence</u>

The first residence that Williams visited was 6562 Jib Road, Eight Mile, Alabama. Williams approached the residence and followed the driveway which led to the side entrance of the house. The front entrance was fenced off, so Williams proceeded to the side door. As he approached the side door he "encountered an overwhelming odor of fresh growing marijuana". He discovered that the smell was emanating from a broken window pane and the crack between the side double doors. Williams could hear a television and had observed a vehicle in the drive, yet no one answered when he knocked on the door. Williams also observed surveillance cameras on the exterior of the residence.

Based on the anonymous tip and the overwhelming odor of marijuana, Williams wrote out a search affidavit (Exh.1) and then contacted Judge George Hardesty to obtain a telephonic search warrant pursuant to Ala. R. Crim. P. 3.8. Williams chose to request a telephonic warrant, instead of appearing in person, because he was approximately twenty miles away from the Judge, he believed that someone was in the residence and he believed that any juvenile stage plants could easily be destroyed before a traditional warrant could be obtained. Judge Hardesty issued the telephonic search warrant and then subsequently memorialized the basis for the issuance of the warrant. (Exh. 2)

The house was searched and 119 growing marijuana plants were seized along with high intensity discharge lighting equipment, a photo album, assorted documents which included a lease agreement for the residence in Omar Huezo's name, and a high powered assault rifle with a

2

scope. The rifle was found in the room with surveillance monitoring equipment.

Based on the discovery in the house, the fact that the anonymous caller had indicated that the outbuildings were also used to grow marijuana, and the observation that the outbuilding had two five ton air conditioning units hooked to it, Williams called Judge Hardesty to request a telephonic search warrant for the outbuilding. (Exh. 1). Again Judge Hardesty granted the request. (Exh. 2). Only fragments of marijuana plants were found, however the contents of the building appeared to be consistent with a prior marijuana grow facility.

Defendant Omar Huezo claims standing to suppress the evidence seized at the Jib Road residence based on the fact that he was the lessor of the property. Huezo initially contests the validity of the oral warrant, arguing that the circumstances did not justify a telephonic warrant. Ala. R. Crim. P. 3.8(b)(1) provides that a telephonic warrant is permissible if circumstances make it reasonable to dispense with a written affidavit. However, the rule also provides that evidence obtained pursuant to a telephonic warrant is not subject to suppression "absent a finding of bad faith" on the part of the officer. Ala. R.Crim. P. 3.8(b)(7). The Court finds that the officer did not act in bad faith when he requested either telephonic warrant based on the possible destruction of evidence.

Huezo also argues that even assuming the oral warrants were validly obtained, that the search warrant for the house failed in the required specificity, i.e., there was no basis for searching for anything other than the marijuana plants, thus the documents and photo album should be suppressed. The search affidavit requested permission to search for "papers, ledgers, video tapes, pictures or paraphernalia relating to the possession, manufacture, use or distribution of illegal drugs. Any documents identifying the owner or occupants of residence." This request

was based on probable cause to believe marijuana plants were in the house. The officers certainly had cause to also search for evidence related to ownership of the house. Huezo's argument is without merit.[2]   Accordingly, Huezo's motion to suppress is DENIED.

     B) <u>Chutney Drive</u>

Prior to proceeding to Chutney Drive, Williams ran the license plate on the vehicle at Jib Road and discovered it was registered to Juan Sabina. Williams, accompanied by several officers proceeded to the Chutney Drive location. When Williams arrived at Chutney Drive, he encountered three men sitting on the back porch. One of the men identified himself as Juan Sabina and said he spoke English. The other men did not speak English but spoke through Sabina. Huezo stated that he lived at Jib Road.

Imbued with the knowledge of the corroborated tip, the discovery of the large marijuana grow at Jib Road, the high powered rifle positioned close to surveillance monitor, and now the connection of the Chutney Road residence to the Jib Road residence, i.e. Juan Sabina and Huezo, Williams felt a heightened sense of danger to the officers. Accordingly, before continuing to speak to the three men, Williams conducted a protective sweep of the garage and house. In the house he observed high intensity discharge lighting equipment (same type as in Jib Road) but no marijuana plants. After exiting the house, Williams walked around the outbuilding where he could smell growing marijuana.

Based on this information and being fearful of the destruction of evidence, Williams prepared an affidavit requesting to search the house and outbuilding. (Exhibit 4)  A telephonic

---

[2]  The Court also finds unpersuasive Huezo's attempt to apply the limitations of a warrantless search based on exigent circumstances to the current situation where a valid warrant was obtained.

warrant was issued by Judge Hardesty. 245 marijuana plants were seized from the outbuilding. The officers also seized from the house the high intensity discharge lighting equipment and a rifle that was found next to the kitchen window which overlooked the outbuilding.

Yzumy Rodriguez denies that she lived at the residence, claims that she left the residence in September 2009 with no intention to return, and moved to Miami with her son. In spite of this position, Rodriguez claims standing based on a possessory and/or proprietary interest in the house. This claim is based on her husband Jose Noriega's ownership of the house and her assertion, without any cited authority, that as a result she has marital rights to the property.

"The party alleging an unconstitutional search must establish both a subjective and an objective expectation of privacy. The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared to recognize as reasonable." United States v. Segura-Baltazar, 448 F.3d 1281, 1286 (11th Cir. 2006) (quotation marks and citations omitted). Rodriguez has failed to establish either a subjective or objective expectation of privacy.

Clearly, Rodriguez has abandoned any possessory interest in the property by leaving with no intent to return; she testified that she had neither a present or future interest in possession of the property. Moreover, Rodriguez has failed to show a proprietary interest in the property that gives her standing to challenge the search of the property. Presumably, Rodriguez is relying on the fact that under Alabama law, a spouse may be awarded a proprietary interest in the marital homestead even when she does not hold title to the property. The fallacy of this argument is that Rodriguez merely has a potential proprietary interest upon divorce. Bumpers v. Bumpers, 380 So.2d 918 (Ala. Civ. App.1980) ("The right of either spouse to any marital property is left to the

sound discretion of the trial court, based on the unique facts and circumstances of each case."). Moreover, even if Rodriguez had a future ownership interest, it would not support her claim of standing. "While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, property rights are neither the beginning nor the end of this Court's inquiry." United States v. Salvucci, 448 U.S. 83, 91, 100 S.Ct. 2547, 2553 (1980). It is not objectively reasonable to expect privacy in a home which you have abandoned and in which you currently hold no ownership interest. Accordingly, Rodriguez' motion is DENIED based on her lack of standing to challenge the search.

However, even if Rodriguez had standing, her challenge to the search would fail for the same reason that her co-defendant Noriega's challenge cannot succeed. First, the Court finds that the request for an oral warrant was not made in bad faith, thus the challenge to the means by which the warrant was obtained fails.

Next, Rodriguez and Noriega[3] challenge Williams' protective sweep whereby he gained additional information to support his request for a search warrant. A protective sweep is allowed when there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Maryland v. Buie, 494 U.S. 325, 334, 110 S.Ct. 1093, 1098 (1990). Although the Supreme Court has not extended the protective sweep doctrine to circumstances where there is no arrest, the Eleventh Circuit has. United States v. Legette, 260 Fed. Appx. 247, 249-250 (11th Cir. 2008).

---

[3] The Government did not challenge Noriega's standing, thus the Court presumes he has standing to challenge the search based on Noriega's assertion that this was his residence.

In this case Williams had articulable facts which warranted the protective sweep of both the house and around the outbuilding. Specifically, Williams felt the need to look in the house and to look around the outbuilding to assure himself that there was no person hiding who would be a threat to officer safety. This concern was based on evidence connecting the Jib Road and Chutney Drive residences, the evidence that a large marijuana grow was occurring at the Jib Drive residence, the presence of the resident of Jib Road, and the fact that the high powered rifle which had been found at Jib Road appeared to be used in connection with the surveillance monitor as a means of protection against uninvited visitors. The Court finds that the circumstances articulated by Williams warranted a protective sweep. Accordingly, evidence discovered during the protective sweep was legitimately used to obtain the search warrant. Rodriguez' and Noriega's motions to suppress are DENIED.

C) <u>Kushla Road</u>

Williams left officers at Chutney Drive to complete the search and then proceeded to Kushla Road. On the way, Williams was informed about the discovery in the Chutney Drive residence of the rifle next to the kitchen window. This information further heightened Williams' awareness of the potential danger he may encounter at the Kushla Road residence. When Williams arrived at the residence he went to the front door and noted that, like the Jib Road residence, the residence was equipped with security cameras. Williams was immediately informed by other officers that three individuals were in the back yard. The individuals were Madelyn Aloma, Juan Aloma and M. Aloma's teenage daughter. Williams went to the backyard and attempted to speak with the occupants. Only the daughter spoke English.

Williams attempted, through the daughter, to question M. Aloma and request permission

to do a protective sweep of the property. Williams felt the need to conduct a protective sweep of the house and to look around the outbuildings prior to continuing to interview the residents. Again, this was based on the corroborated tip, the large amount of marijuana discovered at the prior two residences, and the suspected use of a rifle at the prior two residences as a means of protecting the marijuana. Also, M. Aloma, through her daughter, informed the officers that her husband was Alcides Sabina, but that he was not at home. This led Williams to believe that the husband could be hiding on the premises which could result in danger to the officers or destruction of evidence.

Williams conducted the protective sweep of the house and upon entering encountered a "tremendous" smell of marijuana plants. In the bedrooms he discovered a large quantity of marijuana plants hanging for drying. As he walked around the outbuilding he observed two five ton air conditioners attached to the outbuilding and could smell marijuana plants.

Based on this information, as well as the prior discoveries at the other two residences, Williams telephonically requested a search warrant. (Exhibit 5). Judge Hardesty issued the warrant. The Court does not find any bad faith in Williams' request for a telephonic warrant.

M. Aloma contests the "knock and talk" on two bases. First she argues that Williams had probable cause to get a warrant prior to arriving at the Kushla Road residence, thus he should have obtained a search warrant in lieu of conducting a "knock and talk". This novel argument is without merit. An officer is not prohibited from talking to a suspect just because he may already have probable cause to arrest him or search his house.

Next, M. Aloma argues that Williams' encounter with M. Aloma is not covered by the "knock and talk" exception because Williams "left the front door and went through the fence and

began interrogating" the defendant. This argument is in reference to Williams going to the backyard to talk to the residents. In United States v. Taylor, 458 F. 3d 1201, 1205 (11th Cir. 2006), the Eleventh Circuit held that the officer's minor departure from the front door to approach the occupant who was coming from behind the house was not outside the permissible "knock and talk" limitations. Admittedly, the present case pushes the envelope, in that the officer left the front door and went into the backyard to speak to the occupants. However, in Taylor, the Circuit Court cited with approval the case of United States v. Hammett, 236 F.3d 1054, 1060 (9th Cir. 2001); a case in which the officers circled the house in an attempt to locate someone with whom they could speak. The present case is indistinguishable. Accordingly, the Court finds that Williams' encounter with M. Aloma was an appropriate exercise of his "knock and talk" authority.

Also, to the extent that M. Aloma challenges the protective sweep, the undersigned finds Williams had articulable facts which warranted the protective sweep. Specifically, considering that the anonymous tip had been corroborated, the magnitude of the illegal marijuana operation that he had previously discovered and the sophistication of the means of protection at the previous two locations, any interview conducted without first assuring himself of the safety of the situation would have been unwise. Accordingly, M. Aloma's motion to suppress is DENIED.

II. Motion to Sever

The defendants have also filed a motion to sever in which they argue that because the evidence seized is inadmissible against them, the "spill over" effect of admitting this evidence against other defendants will be prejudicial. The argument is based on the success of each

defendants' motion to suppress which has not been realized.   Accordingly, the motions to sever are DENIED.

**DONE** and **ORDERED** this 20th day of January, 2010.

<u>s/ Kristi K. DuBose</u>
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**